**Mary E. CURNES, Plaintiff–Respondent,**

v.

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant–Appellant**

No. 22666.

Missouri Court of Appeals, Southern District, Division One.

Oct. 27, 1999.

Motion for Rehearing and Transfer Denied Nov. 19, 1999.

Application to Transfer Denied Dec. 21, 1999.

**6.** Footnote 4, *supra*.

Jeffrey D. Sigmund, Edward K. Fehlig, Ziercher & Hocker, P.C., St. Louis, for appellant.

Bryan T. Renfrow, Daniel, Clampett, Powell & Cunningham, Springfield, for respondent.

JOHN E. PARRISH, Judge.

The Equitable Life Assurance Society of the United States (Equitable) appeals a judgment for Mary E. Curnes (plaintiff) in an action in which she claimed Equitable wrongly paid insurance proceeds on a life insurance policy that insured the life of Sally Arndt. Equitable contends, *inter alia,* that plaintiff's action was not timely filed; that it was barred by § 516.120.[1] This court agrees. The judgment is reversed and remanded with directions.

Plaintiff is the sister of Sally Arndt. Sally Arndt died September 28, 1988, as a result of a gunshot wound to the head. Equitable insured the life of Mrs. Arndt by a policy in the face amount of $200,000. The named beneficiary was George Arndt, Sally Arndt's husband. No contingent beneficiary was named.

George Arndt went to Equitable's office in Des Moines, Iowa, on September 30, 1988. He signed a claim form that was completed by a claims representative, Deborah Martin, based on information he provided. The form identified "Cause of Death" as "Suicide." Ms. Martin testified that her understanding was that Mr. Arndt was in Iowa to prepare for funeral services; that he and his wife were from the Des Moines area. Ms. Martin said it was not unusual to have walk-in claimants.

Mr. Arndt was told that the claim would be processed after Equitable received a copy of Mrs. Arndt's death certificate. Ms. Martin received a certified copy of the death certificate "a couple of weeks" later. She testified that after receiving the death certificate, she "examined the claim, made sure everything was consistent, it did show a suicide. . . ." On November 2, 1988, the claim was paid by check payable to George Arndt. In July 1989, George Arndt was arrested for the murder of Sally Arndt. He was tried and on June 18, 1992, found guilty of murder in the second degree. *See State v. Arndt,* 881 S.W.2d 634 (Mo. App.1994).

Plaintiff filed the action that produced this appeal May 16, 1996. It alleged that plaintiff was the sister and only living rela-

---

1. References to statutes are to RSMo 1994.

tive of Sally Arndt. It stated that plaintiff filed a petition for determination of heirship pursuant to § 473.663; that a determination was made that plaintiff was the sole remaining heir of Sally Arndt. A copy of a decree of the Probate Division of the Circuit Court of Stone County, Missouri, dated April 28, 1995, stating that plaintiff was "the only heir of decedent, Sara Ann Arndt a/k/a Sally S. Arndt a/k/a Sara S. Arndt, who died September 28, 1988, in Stone County, Missouri," was attached to the petition.

Equitable's answer included the affirmative defense that plaintiff's claim was "barred by the applicable statute of limitations, in that Plaintiff filed her cause of action more than five (5) years after the alleged negligent or wrongful acts of [Equitable] and the alleged damages suffered by Plaintiff, in violation of § 516.120 RSMo."

The trial court found for plaintiff. It found, with respect to Equitable's claim that plaintiff's action was barred by § 516.120, that plaintiff's suit was not a negligence action; that "the cause of action is a suit on an insurance policy." It held, "Missouri courts have consistently applied the ten year statute of limitations [i.e., § 516.110(1) ] to suits on insurance policies."

Equitable's allegation of error with respect to the trial court's finding that "the ten year statute of limitations" applied to plaintiff's action asserts that the trial court erred in not entering judgment dismissing plaintiff's action "because [plaintiff's] action was not on a written promise to pay the policy's death benefit, but rather an action *ex delicto* charging [Equitable] with negligent payment to the named beneficiary." Equitable argues that the applicable statute was the five-year statute under § 516.120. Equitable paid the policy benefits November 2, 1988. Plaintiff's suit was filed May 16, 1996, more than five years after payment was made.

■ Section 516.110(1) requires any action for payment of money based on a writing to be brought within ten years. Section 516.120 requires tort actions to be commenced within five years. *Ryder v. Ward,* 933 S.W.2d 428, 430 (Mo.App.1996). The question to be answered is, "Was the action tried by the trial court an action for payment of money based on a writing or one in tort?"

*Equitable's Argument*

The trial court concluded that the action was "a suit on an insurance policy"; that, therefore, the ten-year statute of limitations under § 516.110(1) applied. Equitable argues that this was error; that the allegations in the petition were that Equitable was negligent in paying the life insurance benefits to George Arndt.

■ The nature of a civil cause of action is determined from the allegations in the petition. *Aetna Cas. & Sur. Co. v. Lindell Trust Co.,* 348 S.W.2d 558, 563 (Mo.App. 1961). The form of the action is determined from the real nature and substance of the facts alleged, not from what the pleader may have called it. *Id. See also, Main Street Feeds, Inc. v. Hall,* 975 S.W.2d 227, 233 (Mo.App.1998), and *Bishop v. Goldschmidt,* 436 S.W.2d 47, 50 (Mo. App.1968).

The elements of a negligence action are (1) a duty or obligation recognized by the law requiring the actor to conform to a standard of conduct for the protection of others against unreasonable risks; (2) failure by the actor to conform to the standard of conduct; (3) a reasonably close causal connection between the actor's conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Walker Mobile Home Sales, Inc. v. Walker,* 965 S.W.2d 271, 277 n. 8 (Mo.App.1998), citing *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 431 (Mo. banc 1985).

*(1) Duty or Obligation Recognized by Law Requiring Equitable to Conform to Standard of Conduct to Protect Plaintiff*

Plaintiff's petition alleged that Equitable "made and issued" a policy of life insurance; that it "undertook and agreed to pay the sum of Two Hundred Thousand Dollars ($200,000.00) in the event of the death of Sally Arndt." The petition alleged that Sally Arndt died September 28, 1988; further, that"[u]pon information and belief," the sole beneficiary of the policy was George J. Arndt. The petition alleged that policy benefits in the amount of $201,411.12 were paid to Mr. Arndt on or about November 2, 1988.

The petition stated George J. Arndt was charged with and tried for murder; that he was found guilty of murder in the second degree. It asserted, "George J. Arndt, by and through his act of murdering his wife Sally Arndt, was disqualified and prohibited from receiving life insurance proceeds paid by [Equitable]." It asserted that Equitable was required to exercise due diligence concerning the facts surrounding the death of its insured to assure payment of policy proceeds was made to the person entitled to receive them. The petition asserted that if Equitable "had properly refused to pay the insurance proceeds to the named beneficiary, George J. Arndt[,] based on his actions in murdering the insured Sally Arndt, the company would have been bound to pay the insurance proceeds to the estate of Sally Arndt." The pleading stated that there was no administration of her estate; that plaintiff was determined to be Sally Arndt's "sole remaining heir" in a determination of heirship proceeding initiated pursuant to § 473.663.

The nature and substance of the allegations were that Equitable had a duty to act with due diligence to determine if George J. Arndt was entitled to the life insurance proceeds before disbursing those proceeds to him; that Equitable had a duty to pay the proceeds to plaintiff if George Arndt was disqualified as the beneficiary.

*(2) Failure to Conform to Standard of Conduct*

The petition stated that Equitable acted negligently "in making payment of insurance proceeds to George J. Arndt on or about November 2, 1988." It asserted that Equitable was negligent in that it failed to exercise due diligence in ascertaining whether Mr. Arndt was qualified to receive the life insurance benefits in the following respects:

(a) Defendant failed to make any investigation into the claim for death benefit proceeds filed by George J. Arndt based upon the death of Sally Arndt;

(b) Defendant failed to determine through investigation at the time the claim was made by George Arndt that he had made a claim on additional life insurance proceeds with another insurance company, Metropolitan Life Insurance Company[,] under a policy that had just been issued and delivered to the home of George and Sally Arndt on the day before her death. [Equitable] failed to discover that an investigation was being conducted by Metropolitan Life Insurance Company under a contested death claim;

(c) [Equitable] failed to make any investigation into the reason why, or truth of the assertions that Sally Arndt committed suicide, as reported by the sole named beneficiary, George Arndt[;]

(d) [Equitable] failed to make any investigation into Mrs. Arndt's health, finances or marital status;

(e) [Equitable] failed to investigate or contact any members of Stone County law enforcement officials who had worked the case or anyone associated with the coroner's office in Stone County, Missouri, concerning the death of Sally Arndt;

(f) [Equitable] failed to investigate or contact any of Sally Arndt's friends or family who had information at that time

that would indicate that Sally Arndt's death was not a suicide;

(g) Even if [Equitable] still had any questions in mind concerning payment of the insurance proceeds, the company could have chosen to deposit the money with a court of law asking for a determination of ownership through a declaratory judgment or interpleader action.

The petition further alleged that after George Arndt was convicted of the murder of Sally Arndt, plaintiff notified Equitable of the conviction and inquired if Equitable intended to recover the insurance proceeds; that Equitable refused to seek restitution of the insurance proceeds from Mr. Arndt. The petition alleged that Equitable breached its duty to exercise due diligence to assure that the insurance proceeds were paid to the proper person.

### (3) Causal Connection

The petition asserted that had Equitable "properly refused to pay the insurance proceeds to the named beneficiary, George J. Arndt based on his actions in murdering the insured Sally Arndt, the company would have been bound to pay the insurance proceeds to the estate of Sally Arndt." It contends there was no administration of the estate of Sally Arndt but that plaintiff was determined to be her "sole remaining heir" in a proceeding for determination of heirship pursuant to § 473.663; that, therefore, because George J. Arndt was disqualified from receiving the life insurance proceeds, plaintiff was entitled to those benefits.

### (4) Actual Loss

Plaintiff's petition asserted that because of the "wrongful payment" by Equitable to Mr. Arndt, plaintiff was damaged in not receiving life insurance proceeds in the amount of $201,411.12.

Equitable contends that plaintiff's petition pleaded the elements of a negligence action; that the nature and substance of the facts alleged state an action in tort.

### Plaintiff's Analysis

Plaintiff's response to Equitable's argument is:

Pursuant to Missouri law, a plaintiff seeking to recover insurance proceeds in a case where a beneficiary has murdered an insured must prove the following:

(1) The existence of an insurance policy on the life of the insured;

(2) That the only named beneficiary on the policy is convicted of the murder of the insured, and

(3) Where there is no contingent beneficiary on the policy, that plaintiff is an heir of the insured.

Relying on this analysis, plaintiff concludes, "All such facts were pled and proven by [plaintiff] in the case at bar."

Plaintiff relies on *Higgins v. McElwee,* 680 S.W.2d 335, 342 (Mo.App.1984). *Higgins* holds that a beneficiary of a life insurance policy who murders the policy's insured may not recover the proceeds of the policy; that in the absence of contingent beneficiaries, the proceeds of the policy pass to the estate of the insured or the insured's heirs. *Higgins,* however, does not involve a dispute between an insurer and an heir. The issue in *Higgins* involves the question of whether the persons entitled to life insurance proceeds should bear responsibility for costs incurred by the decedent's estate in collecting the insurance proceeds. *Id.* There was no dispute between an heir claiming a right to insurance benefits and an insurer that paid funds to a beneficiary who was later determined to be disqualified from receiving those funds. *Higgins* does not aid plaintiff's claim that the action pleaded and tried was not a tort claim.

### Elements of Breach of Contract

In order to plead an action against Equitable for breach of a life insurance contract, plaintiff would have had to allege facts that demonstrated: (1) the existence and terms of the policy; (2) the right or

interest entitling the plaintiff to sue; (3) performance or waiver of conditions precedent; (4) death of the insured; (5) the amount of the insurance; and (6) that payment was due her, but had not been made. *Giles v. American Family Life Ins. Co.,* 987 S.W.2d 490, 494 (Mo.App.1999).

There are facts interspersed in plaintiff's petition that, when taken out of the context in which they appear, could state elements of an action for breach of a life insurance contract. These facts are not, however, pleaded with particularity or conciseness, nor are they pleaded as an alternative cause of action as permitted by Rule 55.10. Furthermore, the evidence plaintiff adduced at trial was directed toward allegations that Equitable was negligent in wrongly paying funds to George Arndt to which plaintiff claimed an interest.

Plaintiff presented extensive evidence concerning the investigation of Mrs. Arndt's death by crime laboratory personnel and the assistant coroner who was at the residence after the death was reported. Plaintiff testified during her case in chief. She was asked questions concerning whether she was contacted following the death of Mrs. Arndt by any personnel from Equitable. Plaintiff was asked if she had been contacted between the date of Mrs. Arndt's death and the date of Mr. Arndt's arrest, and whether she was contacted between the time of Mrs. Arndt's death and the date Mr. Arndt was convicted of murdering her. Plaintiff testified that she had not been contacted on behalf of Equitable.

At the close of plaintiff's case in chief, Equitable moved for judgment.[2] In its argument in support of the motion, Equitable pointed out that plaintiff had produced no copy of the contract, that plaintiff "did not produce the policy itself." Equitable emphasized that plaintiff's only evidence was that Equitable was obligated to perform a duty to pay the beneficiary of a life insurance policy upon the death of the insured.

Plaintiff's response was that Equitable had admitted that an insurance policy was in effect at the time of Mrs. Arndt's death. Plaintiff told the trial court, "This case revolves around the actions of the Equitable in determining and making its payment to Mr. Arndt." Plaintiff's argument to the trial court was that, "under the facts of this particular case," she was entitled to a determination of Equitable's accountability "in making the payment to George Arndt in the manner in which they did."

Equitable responded, "[I]f this case is to be submitted on a negligence theory, [plaintiff's attorney] hasn't put forth any evidence that Equitable had a duty to make an independent investigation to second guess or verify the coroner's determination as to cause of death. That duty hasn't been established." Equitable argued that while it should not pay a disqualified beneficiary, it would not be liable for having paid a beneficiary who became disqualified four years after the fact.

Plaintiff responded by telling the trial court, "Let me address the issue of basically negligence in this case. There is case law that indicates that when a company is aware of suspicious circumstances involving a death of a person that they are under a duty to conduct a reasonable and prudent investigation into the case." Plaintiff argued that it would have been prudent for Equitable to wait a reasonable time to pay the claim under circumstances where there was an ongoing investigation.

The argument to the trial court continued with respect to whether Equitable had knowledge that would have made it "aware of a fact or suspicion as to the cause of death." At its conclusion the trial court denied the motion for judgment at the

2. There is no copy of a motion for judgment at the close of plaintiff's evidence included in the legal file. A docket entry reflects, "Defendant [i.e., Equitable] files Motion for Directed Verdict." The docket entry reflects that argument was heard. The docket entry states, "Court overrules Motion for Directed Verdict or Judgment at Close of Plaintiff's Evidence."

close of plaintiff's case. Equitable then made opening statement and presented evidence. In opening statement, Equitable emphasized, "This law suit is about whether Equitable did its job and did it correctly." Equitable then presented evidence as to the extent it investigated the claim made by George Arndt and concerning the facts it determined and relied upon in paying the claim. At the close of all the evidence, both parties renewed motions for judgment. Oral arguments were heard, and the trial court prescribed the time the parties would be allowed to submit proposed findings of fact and conclusions of law. The case was ordered under submission upon the filing of proposed findings and conclusions.

After the case was submitted, the trial court filed findings of fact and conclusions of law and entered judgment. The trial court's conclusions of law included its declaration that the ten-year statute of limitations applied "to suits on insurance policies." The trial court stated:

> While plaintif's [sic] petition uses language involving breaches of duty, failure to investigate, failure to pay the proper person, the Court concludes plaintiff's action is not one of negligence. Clearly, certain acts of negligence and breaches of duty by [Equitable] have resulted in The Equitable paying George Arndt. Nevertheless, the cause of action is a suit on an insurance policy. . . .

This court holds that the trial court erroneously declared and applied the law in its determination that plaintiff's action was not a tort action. The theory of recovery plaintiff pleaded was negligence. The evidence she presented was that Equitable acted negligently in paying funds to George Arndt. Issues on appeal will not be considered on a theory different from that on which the case was tried. *Olson v. Christian County*, 952 S.W.2d 736, 742 (Mo.App.1997).

Plaintiff's claim may be likened to the claim for conversion of proceeds of a forged check in *Chemical Workers Basic Union v. Arnold Savings Bank*, 411 S.W.2d 159 (Mo. banc 1966). In that case the court held that the nature of the suit brought by the union was an action in tort, not an action brought on the contents of a writing. As in *Chemical Workers, supra*, this case was not brought on the contents of the writing, in this instance the insurance policy, but on the basis of Equitable's negligence in paying the life insurance proceeds to a disqualified beneficiary.

The applicable statute of limitations is § 516.120. Plaintiff did not bring her action within five years of the acts about which she complained, as that statute requires. It was, therefore, barred. The judgment is reversed. The case is remanded. The trial court is directed to enter judgment for Equitable on plaintiff's petition.

MONTGOMERY, C.J., and SHRUM, J., concur.

CROW, P.J., recused.